# NO. 12-08-00320-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DONALD RAY BOYD,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

A jury convicted Appellant, Donald Ray Boyd, of the offense of aggravated sexual assault of a child. The jury found the enhancement paragraph in the indictment to be true and assessed his punishment at imprisonment for life. Appellant urges three issues on appeal. In his first issue, he complains that the trial court erred in not instructing the jury "that they could only consider Appellant's bad acts to determine intent or rebut a defensive theory." In his second issue, he contends "the trial court erred in allowing the State to improperly offer evidence of extraneous offenses." In his third and last issue, he maintains the trial court erred in allowing testimony as to the credibility of the complainant. We affirm.

### BACKGROUND

The indictment alleges "that on or about June 15, 2001, Appellant did then and there, intentionally or knowingly cause the sexual organ of D.C., a child who was then and there younger than fourteen years of age and not the spouse of the defendant, to contact and penetrate the mouth of the defendant."

D.C. was eighteen years old when he testified at Appellant's trial. Appellant was his

stepfather. D.C. told the jury that when he was ten years old, Appellant exposed his penis to him in the bathroom. He testified that Appellant touched his penis with his hand and that Appellant also touched his own penis. This behavior took place once or twice a month for some time and occurred more than four times. According to D.C., the last incident occurred when he was twelve years old when Appellant placed his mouth on D.C.'s penis.

D.C. told no one of these events until he was seventeen. He then told his mother. His disclosure of the alleged abuse came at about the same time that his mother and stepfather made D.C.'s girlfriend leave the house because of the negative influence she had on him. D.C. admitted that, during a previous investigation, he had told the child protective services investigator on September 2, 2005 that there was "no physical or sexual abuse going on in this house."

D.C.'s brother, C.C., testified that Appellant had sexually assaulted him on two occasions. He also admitted that, in several interviews with Child Protective Services (CPS) and law enforcement agencies, he had denied that any such conduct had taken place.

Appellant's daughter, C.B., testified that, sometime in the year before trial when she was nine years old, she awoke to find her father over her with his hand inside her panties touching her genital area. His eyes were closed as if he were asleep and he never said anything. After five or so minutes he rolled over, apparently asleep. Her mother was sleeping on the other side of her, but C.B. did not wake her, because she was afraid. In contrast to the incidents alleged by the boys, she told her mother two days later.

### JURY INSTRUCTION ON EXTRANEOUS OFFENSES

In his first issue, Appellant maintains "[t]he trial court erred in not instructing the jury that they could only consider Appellant's bad acts to determine intent or to rebut a defensive theory." Appellant did not request such an instruction at trial.

When the state is permitted to introduce evidence of a defendant's extraneous acts for a limited purpose, the defendant has the burden of requesting an instruction limiting the consideration of those acts to only those purposes for which they were admitted. *Ex parte Varelas*, 45 S.W.3d 627, 631 (Tex. Crim. App. 2001). The trial court errs in not giving the instruction if requested by the defendant. *Id.*

2

Appellant failed to request an instruction limiting the use of the extraneous offense evidence at the time the evidence was admitted.  *See* TEX. R. APP. P. 33.1(a)(1).  Therefore, no error is preserved.  *See id.* Appellant's first issue is overruled.

**ADMISSION OF EXTRANEOUS OFFENSES**

In his second issue, Appellant complains that "the trial court erred in allowing the State to improperly offer evidence of extraneous offenses including multiple occasions of alleged sexual misconduct with children and general evidence of Appellant's character."

**Standard of Review**

A trial court's admission of extraneous offense evidence is reviewed for an abuse of discretion.  *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996).  A trial court does not abuse its discretion as long as its decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

**Applicable Law**

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that on a particular occasion the person's actions conformed to that character.  TEX. R. EVID. 404(b).  It may be admissible, however, for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to rebut a defensive theory.  *Id.*; *Johnston v. State*, 145 S.W.3d 215, 220-21 (Tex. Crim. App. 2004).  Extraneous offense evidence is admissible under rule 404(b) when it is offered to rebut an affirmative defense or a defensive issue that negates one of the elements of the crime.  *Powell v. State*, 63 S.W.3d 435, 438-40 (Tex. Crim. App. 2001).  Evidence of a defendant's other similar acts of sexual misconduct is admissible to contradict and rebut the defendant's defensive theory that he is the victim of a "frame-up."  *Wheeler v. State*, 67 S.W.3d 879, 887 (Tex. Crim. App. 2002).  "[E]vidence of a defendant's particular *modus operandi* is a recognized exception to the general rule precluding extraneous offense evidence, if the *modus operandi* evidence tends to prove a material fact at issue, other than propensity."  *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007).  "In the context of extraneous offenses, *modus operandi* refers to 'a defendant's distinctive and idiosyncratic manner of committing criminal acts.'" *Id.* at 880-81.  "[E]vidence of a remarkably

3

similar act may be admissible to prove the *corpus delicti* (the crime itself), intent, or lack of consent under 'the doctrine of chances.'" ***Id.*** at 881 (quoting ***Daggett v. State***, 187 S.W.3d 444, 453 n.18 (Tex. Crim. App. 2005)).

If the trial court rules that the evidence of extraneous misconduct is not barred by rule 404(b), the opponent may further object that, although relevant, the evidence should be excluded under Texas Rule of Evidence 403. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Probative value is evaluated by how convincingly it serves to make more or less probable the existence of a fact of consequence to the litigation, coupled with the proponent's need for that item of evidence. ***Casey***, 215 S.W.3d at 879. The trial court is required to determine whether the probative value of the evidence is substantially outweighed by one of the countervailing considerations listed in the rule. ***Id.***

In the instant case, Appellant objected that the probative value, if any, of the evidence of similar sexual assaults by Appellant against the victim's brother and sister was substantially outweighed by the danger of unfair prejudice. "Unfair prejudice" refers to the "tendency" of the challenged evidence "to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." ***Montgomery***, 810 S.W.2d at 389.

An appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). Under the rule, the reviewing court "may not reverse for nonconstitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial *and* injurious effect or influence in determining the jury's verdict." ***Garcia v. State***, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004).

**Discussion**

Appellant complains that the trial court admitted evidence that Appellant physically abused his wife and children, abused alcohol and drugs, and sexually abused his daughter and D.C.'s younger brother.

*Physical Abuse and Substance Abuse*

Much of the testimony regarding Appellant's abuse of his wife and children and of

4

Appellant's alcohol and drug abuse was, in fact, introduced by Appellant in support of his defensive theory that D.C.'s allegations were concocted out of resentment stemming from Appellant's mistreatment of the family. Error, if any, in the admission of any such evidence presented by the State was not preserved by a contemporaneous trial objection. *See* TEX. R. APP. P. 33.1(a)(1); ***Ethington v. State***, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Therefore, there is nothing for us to review.

### *Sexual Abuse of D.C.'s Brother*

Appellant, however, strenuously objected to the State's proffer of the testimony of D.C.'s younger brother that, on two occasions five years earlier, Appellant had sexually abused him. The State argued a laundry list of reasons for the admission of the testimony, including identity, common scheme or plan, and opportunity. The trial court allowed the brother's testimony as relevant to rebut a defensive theory and to the issue of opportunity. The trial court then conducted a rule 403 balancing test and concluded that the evidence was "extremely probative" and that its probative value was not substantially outweighed by its potentially unfair prejudicial effect.

The extraneous sexual abuse offense alleged against Appellant by D.C.'s younger brother was substantially similar to the charged offense. The boys were the same age when their stepfather allegedly sexually abused them. The manner and location of the abuse alleged by the brothers were identical.

A substantial part of Appellant's cross examination of D.C. was devoted to the attempt to undermine D.C.'s credibility. Appellant's questioning pointedly emphasized that D.C.'s accusation came five years after the alleged event and coincident with Appellant's expulsion of D.C.'s girlfriend from their home. Appellant elicited responses from D.C. regarding Appellant's drug and alcohol abuse, Appellant's mistreatment of D.C.'s mother, the poor condition of the home, and Appellant's harsh and arbitrary discipline. It is apparent that Appellant brought out this unflattering information, or allowed the State to elicit it without objection, in order to demonstrate the basis for and depth of D.C.'s resentment against him, a vicious resentment sufficient to impel D.C. to concoct the charge against him.

We agree with the trial court that testimony regarding Appellant's sexual abuse of D.C.'s younger brother was admissible to rebut Appellant's defensive theory that D.C. had fabricated the

accusation against him. Nor did the trial court abuse its discretion in determining that the probative value of the brother's testimony regarding the extraneous act of sexual abuse was not substantially outweighed by the danger of unfair prejudice. As the trial court commented, the brother's testimony was extremely probative and it served to reinforce the State's case at its weakest point. The complainant had made no outcry for five years, and then only at a time when as Appellant's cross examination had shown, he might plausibly be suspected of fabricating the accusation out of an understandable and deep resentment.

*Sister's Testimony*

Over Appellant's objection, the trial court allowed Appellant's ten year old daughter to testify that the year before, she awoke one night to find her father over her with his eyes closed and his hand in her panties feeling her genital area. She had been sleeping that night between her mother and father as she ordinarily did. She believed Appellant was intoxicated. He never opened his eyes or said anything to her. After five minutes or more, he rolled over on his side of the bed, apparently asleep. Two days later, she told her mother what had happened. Her mother called CPS and an investigation ensued, which resulted in the indictment of Appellant for the sexual abuse of D.C.

The trial court found the testimony admissible to rebut Appellant's defense of fabrication. The court noted that all the assaults against the children took place in the home when they were approximately the same age. The court also found that the probative value of her testimony outweighed its potential for unfair prejudice. Her testimony answered a weakness in the State's case. In cross examining the two boys, the defense had emphasized the delay, in each instance, of several years before the alleged victims reported the abuse. In the case of the daughter, as the court noted, her first outcry came within two days. During cross examination of Appellant's two stepsons, Appellant had shown that both boys might plausibly be suspected of fabricating their accusations against Appellant in retaliation for their brutal treatment. Such a motive could not so easily be assigned to his daughter's testimony. Unlike her brothers, she had not previously denied to CPS that she had been the victim of sexual abuse.

Unquestionably, the daughter's testimony tended to show that Appellant was a sexual predator and that, in assaulting D.C., he acted in conformity with that propensity. However, her testimony also had relevance apart from its tendency to show character conformity. It forcefully

6

served to rebut Appellant's defense that he was the victim of a retaliatory "frame up." Its inherent force coupled with the State's need for such evidence not available from any other source gave her testimony great probative value. It took little time to present. In balancing the probative value of the daughter's testimony against its potential for prejudice, we conclude the trial court did not abuse its discretion in allowing her testimony. This is a close case. In reaching our conclusion we are mindful of the supreme court's admonition in *Montgomery* that "trial courts should favor admission in close cases[.]" *Montgomery*, 810 S.W.2d at 389.

Appellant's second issue is overruled.


### EXPERT TESTIMONY CONCERNING COMPLAINANT'S CREDIBILITY

In his third issue, Appellant complains the trial court erred in allowing expert testimony regarding D.C.'s credibility.

**Facts**

The State offered the testimony of Gayle Burress, a licensed professional counselor with extensive experience in counseling sexually abused children. Dr. Burress did not treat or interview D.C. nor did she interview any of the other witnesses. All her information about the case, she acknowledged, came from reading the State's file or from law enforcement personnel. Dr. Burress remained in the courtroom throughout the trial. In the *Daubert* hearing that preceded her testimony, Dr. Burress told the court that her role at trial was to answer hypothetical questions about the behavior and reactions of child abuse victims in order to aid the jury's understanding of why child abuse victims are frequently reluctant to tell what happened to them—why they often delay making any outcry. She disclaimed any intention or ability to render an opinion about any individual in the case, because she had neither examined or evaluated them.

The trial court ruled Dr. Burress's testimony admissible over Appellant's objection that her specialized knowledge would not assist the jury's understanding of the evidence or its determination of a fact in issue, citing Texas Rule of Evidence 702. Appellant also objected that the evidence would not be relevant under rules 401 and 402.

On direct examination, the prosecutor asked Dr. Burress, "In your training and experience, was it unusual for you to treat individuals who were victims of sexual abuse who didn't outcry for

years?" Dr. Burress responded, "It's not at all unusual." Appellant objected, "I'm going to object to the form of the question as well as the response on the grounds that it is a general question which does not relate specifically to the people involved in this case or the facts of this case." The trial court overruled Appellant's objection but allowed Appellant a running objection.

On cross examination, the following exchange occurred:

Q.     Okay. Of the 100-plus cases or so that you've testified in, how many prosecution cases would you say you have declined to appear as a witness in?

A.     Not that many, but, periodically, I decline. The case doesn't hold together for me. It doesn't fit. There are too many unexplained inconsistencies.

On the State's redirect examination, the following exchange occurred, which Appellant contends represented direct testimony supporting the credibility of the complainant:

Q.     And you - - actually, you do not have to testify in these cases, do you?

A.     That's right.

Q.     In fact, there have been times where after I give you material and you look at it, you don't accept the responsibility of coming in here and testifying before twelve citizens of this county; isn't that correct?

A.     That's correct.

Q.     And you're completely okay with telling me that, aren't you?

A.     Yes, I am.

Q.     But in this case, you're completely fine with testifying before the twelve citizens of this community, aren't you?

A.     I am.

**Standard of Review and Applicable Law**

A witness may offer an expert opinion if the witness is qualified to do so by knowledge, skill, experience, training, or education, and the witness possesses scientific, technical, or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue. TEX. R. EVID. 702. We review a trial court's decision as to whether to allow expert opinion for an

8

abuse of discretion. *See Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007).

Although an expert's testimony may indirectly serve to support the credibility of a witness, an expert's testimony may not constitute a direct opinion on the truthfulness of a child complainant's allegations. *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993). In *Schutz v. State*, 957 S.W.2d 52 (Tex. Crim. App. 1997), the court of criminal appeals identified five categories of general and specific evidence that touch on a complainant's credibility in child sexual assault cases and set out the circumstances under which each category of evidence is admissible: (1) substantive evidence of guilt that incidentally impacts on credibility (admissible during offering party's case in chief); (2) general testimony relating to impaired witnesses or declarants (admissible during offering party's case in chief if impaired person is expected to be a witness or declarant); (3) general testimony that directly attacks credibility (admissible during offering party's case in chief to attack credibility of witness or out of court declarant); (4) general testimony that supports credibility (admissible as rebuttal to attacks on credibility so long as there is a loose fit between the rebuttal evidence and the predicate attacks on credibility); and (5) specific testimony supporting or attacking credibility (may be admitted only to rebut other specific testimony attacking or supporting credibility and only if there is a "tight fit" between the rebuttal testimony and the previous specific testimony attacking or supporting credibility). *Id.* at 75-76.

## Discussion

The State argues that Appellant has failed to preserve error by timely objection raised in the trial court. *See* TEX. R. APP. P. 33.1(a)(1). At trial, Appellant was granted a running objection to Dr. Burress's testimony based on his rule 702 objection that her specialized knowledge would not assist the trier of fact in understanding the evidence or determining a fact in issue. On appeal, Appellant raises the complaint that Dr. Burress's challenged testimony constituted a direct opinion on the complainant's credibility. Appellant's complaint on appeal does not comport with his objection in the trial court, and no error is preserved. *See Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996). Appellant's third issue is overruled.

### DISPOSITION

The judgment of the trial court is *affirmed*.

9

                                    __BILL BASS__
                                        Justice


Opinion delivered July 31, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals,*
*Tyler, sitting by assignment.*


(DO NOT PUBLISH)